IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

JOHNNY MAYNOR, ANTHONY MURPHREE, )
CHRISTOPHER NICHOLS, YVETTE BARBEE, )
JOSEPH BOWIE, JAMES BROWN, KELVIN )
COWAN, McARTHUR GREEN, KRISTY LEIGH )
GRIFFIN, CARRIE JACKSON, CLEVELAND )
OWENS, WILLIE PERRY, ALNAS RUSSELL, )
MAURICE SEARS, BILLY RAY SMITH, and )
MICHAEL VAUGHN, on behalf of themselves )
and all others similarly situated, )
)
              Plaintiffs )
) Civil Action No.
vs. )
) 0851
) 01-C-0951-NE
MORGAN COUNTY, ALABAMA, STEVE CRABBE, )
Sheriff of Morgan County, and MYRA YATES, Jail )
Administrator, in their official capacities; LARRY )
BENNICH, JEFF CLARK, DON STISHER, STACY )
GEORGE, and FAY SPARKMAN, in their official )
capacities as members of the MORGAN COUNTY )
COMMISSION; DON SIEGELMAN, Governor of )
the State of Alabama, and MIKE HALEY, Commis- )
sioner of the ALABAMA DEPARTMENT OF COR- )
RECTIONS, in their official capacities, )
)
              Defendants )

**PRELIMINARY FINDINGS OF FACT AND
CONCLUSIONS OF LAW**

This case has been brought and certified as a class action by inmates of the

Morgan County Jail. The Court has carefully considered the evidence adduced at the preliminary

hearing of April 12, 2001, together (by agreement of the parties) with the evidence adduced at a

1

similar hearing in the predecessor of this case, *Maynor et al. v. Morgan County, Alabama, et al.* (N.D. Ala. CV- 01-C-0520). Based on the evidence, the Court makes the following preliminary Findings of Fact and Conclusions of Law.

I.

To say that the Morgan County Jail is overcrowded is an understatement. The sardine-can appearance of its cell units more nearly resemble the holding units of slave ships during the Middle Passage of the eighteenth century than anything in the twenty-first century.

Inmates in the Morgan County Jail are required to sleep on the concrete floor space under bunks, on the concrete floor space between bunks within cells - sometimes within two feet of commodes or showers, on tables (on which meals are served) and between tables in the anterooms of the cell units. Sometimes, inmates are not provided with sleeping mats, blankets, or sheets.

The linen provided to inmates is not cleaned on a regular basis. When inmates send out their clothes for laundering, they must wait days or weeks (without clothes) until the laundry is returned.

The cell units are dirty and unkept. The Jail does not hire contract janitors, and the inmates are not provided with adequate cleaning supplies and equipment to clean the facilities themselves. The metal surfaces of the showers have in places been completely eroded by rust. Soiled clothes, papers, and other debris litter the floors.

The cell units are poorly ventilated. They are cold in the winter (the air-conditioning system runs on winter nights) and hot in the summer. The vents need cleaning.

Inmates unable to purchase towels, soap, and other items for personal hygiene are often

not provided such items by Defendants.

Inmates are seldom (once or twice a month) allowed to leave their cells for exercise in the recreational area atop the jail.

The food is inadequate in amount and unsanitary in presentation.

The known medical needs of inmates go largely unattended: prescribed medications for serious illnesses are not made available for those inmates who cannot afford them; there is a dangerous delay between Defendants' awareness of the serious medical needs of inmates and the response, if any, to such needs. Defendants are largely indifferent to the needs of mentally ill inmates.

According to the State Fire Marshal, the Morgan County Jail is a fire hazard. Following a September 22, 2000, inspection of the Jail, he wrote:

> The occupant load of the jail is 96 inmates. The jail is occupied by 221 inmates and is over crowded. 70 or more inmates are sleeping on the floor. Stacked beds are jammed against each other in some cells.
>
> Building and fire code violations remain the same as reported in the original inspection in 1982. It appears that no attempt have been made to correct the building and fire code violations. There have been several fires in the jail, especially in the past year. Old fire damage was noted in several locations. ....
>
> The fire alarm, smoke detector and manual fire alarm systems are not working. Reportedly, the system has not been operating for some time.
>
> Several sections were so over crowded that a person had to step around inmates to get around in the day room and cells. This created a dangerous situation as to the safety of the officers and inmates if an emergency occurred.
> ....
>
> This building is a hazard to both life and property. It is recommended that this jail be immediately brought up to present day fire and building code requirements or the occupants removed and entrances to the building secured, until the unsafe conditions and overcrowding are abated.

3

Plaintiffs' Exhibit ("PX") 24, p.1-2, Fire Marshal's Report. Assuming the existence of an emergency evacuation procedure, the inmates have not been alerted to it.

## II.

The Alabama State Department of Corrections ("DOC")'s consistent failure to remove "state [prison] ready" inmates from the Morgan County Jail has been the principal cause of the jail's overcrowding. Under Alabama law, when an inmate has been convicted and sentenced in a circuit court and the court reporter's transcript has been filed with the circuit clerk, the DOC should "thereupon" transfer the inmate from the county jail to a state prison. Ala. Code §14-3-30 (1975). But because of alleged overcrowding in the state prisons, the DOC has defaulted in its statutory obligation to remove state ready inmates from the Morgan County Jail.

Alabama's largest county, Jefferson, had 156 state ready inmates as of April 9, 2001; its next three larger counties, Mobile, Madison, and Morgan had 65, 0, and 57 state ready inmates, respectively. As of the same date, there were 104 state ready inmates in the Morgan County Jail. Defendants' Exhibit ("DX") 15. Tuscaloosa, Shelby, Baldwin, and Calhoun are larger than Morgan County, but the number of state ready inmates in each of these counties is significantly less than Morgan County.

As of January 2001, the DOC had the capacity for housing 23,506 inmates in its various penal facilities. Also on that date, the average inmate population in the state penal facilities was 22,738. Thus, despite the DOC's constant refrain that its prisons are filled to the brim and overflowing, the fact is that it is operating at 96.7% of its capacity - based on its own statistics. PX 17, p. 2. The Limestone facility - located in the adjacent county to Morgan - has a capacity for 2,388 inmates. Yet as of three months ago, it had only 2,041 state inmates - 85.5% of its

4

capacity. *Id.* <u>All of the inmates incarcerated in state prisons sleep in bunks or beds</u>; not a single one of them sleeps on the floor!

Defendant Commissioner Michael Haley, before assuming his present position, swore under oath:

> I cannot agree ... that nothing more can be done in each State prison facility to increase available bed space. It is noteworthy that Warden Ron Jones admits that the multi-purpose building in his prison, Draper Correctional Center, could be converted to bed space for approximately 220 additional inmates. . . If that is true for Draper, one of the older prisons, I would think it would be true for most, if not all, of the more modern prisons and on a larger scale. Modern prisons are designed with large opens spaces such as multi-purpose rooms, day rooms, gymnasiums, chapels, law libraries, meeting rooms, and what is termed "program areas" -all areas not originally designed as inmate housing. This space could be converted to additional bed space for the alleviation of most, if not all, of the backlogged state inmates currently housed in County jails.
>
> ****
>
> [S]everal counties have, on occasion and in times of over-capacity, used tents and trailers to house additional inmates and detainees. Further, this has been done without the addition of additional jail staff. Again, although this is not a preferable or desired alternative, it is what many counties have been forced to do in the face of over-crowding caused by State inmates. Such temporary facilities have passed Department of Corrections inspections and were therefore deemed reasonable by Department of Corrections officials. If the use of such temporary facilities is reasonable for use at the county level, they should be reasonable for use at the State level. Furthermore, State facilities, unlike most county jails, are surrounded by large open areas secured by perimeter fencing. These areas would be ideal locations for the use of such facilities.
>
> ****
>
> Overcrowding in county jails presents more of a threat than it does to State prisons because of classification problems. The State system has the luxury of being able to designate portions of facilities as being set aside for special programs, e.g., substance abuse programs, sexual offender programs. The State system also has the luxury of setting aside portions of their prison system to house prisoners with extreme medical needs or extreme psychological needs.

PX 16, pp. 3-5. Although the Commissioner's statements were made three years ago, he assured the Court in his testimony in this case that these statements are as true today as they were when they were made. The Court credits these statements.

The DOC pays nothing to Morgan County for its housing of state ready inmates who should be housed in state prisons. Morgan County is reimbursed by the Alabama State Comptroller the hefty sum of $1.75 per meal for the inmates fed in the Morgan County Jail. It costs the State of Alabama $26 daily to house a state prisoner. The DOC thus has a substantial financial incentive to leave its state prisoners on the barren concrete floors of the Morgan County Jail.

In sum, the Court is not convinced that there are insufficient beds in the state prisons to house the state ready inmates presently sleeping on the floors of the Morgan County Jail. It finds precisely to the contrary. Moreover, assuming *arguendo* a lack of capacity in the state prisons, as the Commissioner has forthrightly testified, the DOC is in a much better position than the Morgan County Defendants to arrange for temporary housing of the inmates for whom it bears legal responsibility.

## Conclusion

The Court preliminarily concludes that Plaintiffs have carried their burden of showing that the conditions extant in the Morgan County Jail violate their rights to the minimal civilized measures of life's necessities and protection from a substantial risk of serious harm under the Eighth Amendment to the United States Constitution. Moreover, they have shown that Defendants have acted and failed to act with deliberate indifference to the uncivilized and hazardous conditions in the Morgan County Jail. Further, they have shown that Defendant Alabama State Department of Corrections, being primarily responsible for the overcrowding in the Morgan County Jail, has been deliberately indifferent to its capacity to correct that problem.

The preliminary injunctive relief to be ordered by this Court is narrowly tailored to remedy the established constitutional violations; and no less intrusive means is available to correct these serious constitutional violations.

By separate order, the requested Preliminary Injunction will be granted.

Done this 17th day of April, 2001.

_____
Chief United States District Judge
U.W. Clemon